## COMMONWEALTH *vs.* CHARLES H. DORUS.

In an indictment on the Gen. Sts. *c.* 160, § 28, for threatening to accuse another of a crime with intent thereby to extort money from him, an averment that the defendant accused a man of seducing a woman, and said that she would swear to it, and that her oath would send him to the state prison, but that, if he would pay the defendant $1000, the defendant would let him go, imports a present threat, and not merely an offer to com-pound an offence imputed in some past threat or accusation; and it is competent for a jury to find that the word " seduce," so used, imported the commission of fornication or adultery.

An indictment on the Gen. Sts. *c.* 160, § 28, for an unlawful threat, need not set forth the precise words of the threat, or the whole of the conversation in which they were uttered.

An indictment on the Gen. Sts. *c.* 160, § 28, for threatening to accuse another of a crime with intent " by such threat " to extort money, sufficiently avers that the intent was to extort the money by the specific threat set forth.

At a criminal trial, the case was committed to the jury with instructions that, if they should agree on a verdict during the adjournment of the court, they might seal it up and sepa-rate. Upon coming into court after the adjournment, it appeared that they agreed on a verdict and separated without reducing it to writing; and the judge directed them then to reduce it to writing and return it without further deliberation, and they did so. *Held,* that the verdict was invalid.

INDICTMENT on the Gen. Sts. *c.* 160, § 28, with two counts: the first averring that the defendant at Boston on February 1, 1870, verbally, wilfully and maliciously threatened Nathaniel F. Emerson to accuse him of committing " the crime of fornication and adultery," with intent then and there " by such threat " to extort money, to wit, the sum of $1000, from him, but not setting forth the words of the threat or stating their substance; the second in like terms, save that the words of the threat were set forth therein as follows : " ' Halloo, old fellow, I want you ; you have seduced this girl ' (meaning a girl then and there present, whose name is to the jurors unknown); ' she will swear you have ; her oath will stand twice as strong as yours, and send you to the state prison for twenty years. Go with me. I am Detective Jones, and if you will give me a thousand dollars I will let you go.' "

In the superior court, before the jury were empanelled, the defendant moved to quash the indictment on grounds which as to the first count are now immaterial, and as to the second count were as follows : Because the threat is not set forth therein according to its tenor ; because the language therein set forth does not import a threat such as is averred ; because it is not averred therein that the defendant threatened to accuse Emerson of a crime punishable by law ; because it avers a threat to accuse Emerson of both fornication and adultery, and the language set forth imports neither, and he could not have been guilty of both ; and because the offence is not pleaded in the language of the statute. The motion was allowed by *Pitman,* J., as to the first count, and overruled as to the second count.

At the trial, Emerson testified that he called at a house on Friend Street in Boston, during the evening of the day charged, and met a woman in the doorway, whom he had seen the day before, and who asked him to walk up stairs and wait a minute, as she wanted to see a man ; that he went up stairs into a small room, and in a few minutes the defendant put his head into the room through a hole in the wall, and said to the witness, " Halloo, old fellow, I want you ; you have seduced this girl ; she will swear you have ; " that the witness said, " What is her oath good

for ? " and the defendant replied that " it was as good as two of
the witness's, and would carry him to the state prison for twenty
years ; " that the defendant then entered the room and said,
" Come with me to the station-house," and took hold of the collar
of the witness, and they went out into the street together ; that
when they had walked about twenty rods there was some talk
between them about " settling," and the defendant asked the wit-
ness " how much he could spare," and the witness replied that he
had not more than $50 ; that the defendant said that he must
have $1000, and, upon hearing the reply of the witness that he
could not pay so much, said that the witness must go to the sta-
tion-house, where it would cost him a good deal more ; that the
witness at last said that he had some bonds at his house in Chel-
sea, and would " give them there," and they went in a horse car
to Chelsea ; that while they were waiting for a horse car the de-
fendant said that he was Detective Jones ; that at Chelsea the
witness delivered to the defendant two bonds of $50 each ; and
that they met in State Street in Boston the next day, by appoint-
ment, and " the bonds were sold, and $1000 in money given to
the defendant." There was other testimony, both for the Com-
monwealth and for the defendant, but the foregoing is all that
was material.

The defendant requested the judge to rule, " that the language
set forth in the second count did not import a threat to accuse
the prosecutor of a crime, within the statute ; and that upon the
whole evidence, if believed, the defendant had been guilty of
falsely personating an officer, and not of the offence for which he
was indicted." But the judge refused so to rule, and instructed
the jury as follows : " The jury must be satisfied that the defend-
ant, by the use substantially of the words set forth in the indict-
ment, under the circumstances in which they were used, did in
substance and effect threaten to accuse E nerson of having com-
mitted the crime of fornication or adultery ; and that he did so
maliciously, and with intent to extort money from said Emerson."

The jury, upon retiring, at the adjournment of the court for
the day, were instructed that when they had agreed upon a ver-
dict they might seal it up and separate. On coming into court

the next morning, it appeared that they had agreed upon a verdict and separated during the night, but that through some misunderstanding on their part the verdict had not been reduced to writing; and they returned the indictment only, in a sealed envelope. The judge thereupon, against the defendant's objection, directed them to retire and reduce their verdict to writing, and instructed them to return it as agreed upon the night before, and without further deliberation on their part. They accordingly retired, and soon afterwards returned into court a verdict of guilty, which was in writing, and signed by the whole panel; and this verdict was affirmed in due form, upon the usual inquiry put by the clerk by direction of the judge, under objection of the defendant, who alleged exceptions.

*C. R. Train*, for the defendant. 1. The language averred, and the conversation proved, does not import a threat, but assumes a state of facts as existing on which a threat or accusation has already been made, and an offer to compound the offence on the receipt of money.

2. The word " seduced " does not import fornication or adultery accomplished, but only such conduct on the part of a man as that the woman is willing to part with her virtue.

3. The indictment should have set out the exact words, according to their tenor; and should have set out the whole conversation which is proved. *Commonwealth* v. *Murphy*, 12 Allen, 449.

4. The intent is not sufficiently charged. The word " such " should have been " said; " or the pleader should have used the word " thereby," which is the language of the statute.

5. The offence proved was only that of falsely personating an officer.

6. The verdict is invalid. *Commonwealth* v. *Durfee*, 100 Mass. 146.

*C. Allen*, Attorney General, *& J. C. Davis*, Assistant Attorney General, for the Commonwealth.

COLT, J. Upon the defendant's motion, the first count in the indictment was quashed. It is objected to the second count, that the threat is not set out according to its tenor, because the language used does not import a threat to accuse of a crime under

Gen. Sts. *c.* 160, § 28, but assumes a state of facts upon which an accusation had been already made, and amounts to an offer to compound the offence for money; and further, that the word " seduced " does not imply a criminal offence accomplished. But this is not the only, or most natural, interpretation of the words used; and the jury were justified in finding, upon evidence which supported this count, that the defendant, by the words used, committed the offence charged.

The verdict however must be set aside. The jury were permitted to separate without returning a verdict into court, and without sealing it up according to the order of the court.

*Exceptions sustained.*