ROBERT GRANT, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Before a verdict returned by a jury in cases of felony is complete it must be accepted by the court for record. At any time after the verdict is returned into court, and before it is accepted by the court for record, the accused has the right to have the jury polled in order to ascertain if the verdict offered is unanimous, and in the absence of a polling of the jury any member thereof has the right *sua sponte* to recede from the verdict agreed upon at any time before it is accepted for record.

2. At common law the verdict of the jury in cases of felony was pronounced in open court, then entered on the record by the clerk, and after this affirmed by the entire jury, when it became complete. The manner of receiving and affirming verdicts in cases of felony discussed.

3. When a jury returns into court an informal, insensible, or a repugnant verdict, or one that is not responsive to the issues submitted, they may be directed by the court to reconsider it, and present a verdict in proper form. The court should, however, use great caution, and not intimate to the jury the kind of verdict in substance that should be returned.

4. After the case had been submitted to the jury under the charge of the court they returned into court the following verdict, *viz:* "We, the jury, find the defendant guilty of manslaughter in the first degree." The court refused to accept this verdict, and stated to the jury that it was not in proper form, as there were no degrees in manslaughter, and that they must retire and present a verdict in proper form. The jury retired and returned the following verdict, *viz:* "We, the jury, find the defendant guilty of murder in the first degree, and recommend him to the mercy of the court," and this verdict was accepted by the court: *Held,* that the court did not err in refusing to receive the first verdict and in accepting the second one.

5. In the opinion of a majority of this court, the testimony in the record is not sufficient to sustain the verdict of murder in the first degree, and a new trial is awarded.

Writ of Error to the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*T. A. & B. B. MacDonell* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J. :

The indictment against the plaintiff in error was for murder, and the sentence of the court pronounced against him was confinement in the State penitentiary for life, based upon a verdict of guilty of murder in the first degree with a recommendation of mercy to the court.

A motion in arrest of judgment was made and over-ruled.  The first ground of the motion is, "that the allegations in the indictment are not sufficient to charge the defendant with murder in the first degree, but that necessary and material allegations to consti-tute such charge are not therein made, and that judg-ment thereon, in view of the verdict received and re-corded by the court, can not be entered."   The only supposed defect pointed out in the brief under this ground of the motion is, that the indictment does not allege that the wound was the cause of the death of the deceased.   We have examined the indictment and find that the objection urged can not be sustained.   It is sufficiently alleged that the deceased died of the wound inflicted upon him by the accused.   The other grounds of the motion in arrest of judgment are not discussed by counsel, and may be considered as aban-doned.   They call for no discussion by us.

The other points presented by counsel for plaintiff in error for our consideration relate to the action of the trial court in refusing to accept the first finding re-turned by the jury, and in entering judgment upon the second verdict, and to the sufficiency of the evidence to sustain the verdict accepted by the court.   After the case had been submitted to the jury under the charge of the court the bill of exceptions recites the following, *viz:*   "We, the jury, find the said defendant guilty of manslaughter in the first de-gree.   C. R. Bisbee, Foreman; which said verdict the said judge then and there refused to receive, stating to the jury that the said verdict was not in such form that the court could receive, and that they must return and present a verdict in proper form; that there were no degrees in manslaughter. Whereupon the said jury retired to their room; and af-

terwards, to-wit: on said day, then and there gave their verdict in words and figures following, to-wit: we, the jury, find the defendant guilty of murder in the first degree and recommend him to the mercy of the court. Nov. 28th, '93. C. R. Bisbee, foreman." Several grounds in a motion for a new trial are based upon the action of the court in rendering judgment on the second verdict, and in refusing to accept th e first one. One ground is, that the court erred in receiving the second verdict finding the defendant guilty of murder in the first degree for the reason that the verdict for manslaughter in the first degree operated as an acquittal of the said offense of murder, the latter being a higher offense and embracing the former. The effect of the first return of the jury is a matter presented for our consideration. There are now no degrees of manslaughter under our statutes, the only offense under this head being manslaughter. Conceding for the present that the first return of the jury was a good finding of manslaughter, and that the added words, "in the first degree," might have been considered by the court as surplusage, what effect must be given to this finding? In cases of felony according to the common law the verdict of the jury is not complete, or conclusive on them, until accepted by the court and recorded. The procedure in returning verdicts in cases of felony, leaving off some of the formalities in reference to forfeiture of estates, is in substance as follows: When the jury have come to a unanimous agreement with respect to their verdict, they return to the box to deliver it. The clerk then calls them over, by their names, and asks them whether they agree on their verdict, to which they reply in the affirmative. He then demands who shall say for them; to which they answer their foreman. This being done, he di-

rects the prisoner to hold up his right hand, and addressing the jury says: "Look upon the prisoner, you who are sworn. How say you? Is he guilty of the felony whereof he stands indicted, or not guilty? The foreman then answers 'guilty,' or 'not guilty,' as the verdict may be. The officer then writes the word 'guilty,' or 'not guilty,' as the verdict is, on the record, and again addresses the jury: Hearken to your verdict as the court hath recorded it. You say that (A) is, guilty (or not guilty) of the felony whereof he stands. indicted, and so say you all." 1 Chitty's Criminal Law, 636; Commonwealth vs. Tobin, 125 Mass., 203;. Givens vs. State (Md.), 25 Atl. Rep., 689.

At common law a verdict was either public or privy:. The public verdict was pronounced in open court in the presence of all the jury, the privy verdict in order to release a jury from confinement, was delivered to the judge out of court. In all cases of felony: and treason the verdict was required to be delivered in open court and in the presence of the prisoner. In the case now before us, the indictment being for murder, the verdict was returned into open court, and it does not become necessary to consider in what cases a verdict may now be rendered out of court. It may be stated, however, that in cases of misdemeanor and in the lower grades of felonies at practice has obtained of consenting for the jury to reduce their finding to writing, and after sealing it up to separate till the next meeting of the court, when the paper being handed to the judge, the verdict is received from the foreman of the jury and recorded in the usual way. The verdict in such a case is not the one written out by the jury, but the one openly delivered in the court, accepted and recorded. Commonwealth vs. Carrington, 116 Mass., 37; Commonwealth.

vs. Durfee, 100 Mass., 146. The common law proced-
ure in reference to delivering verdicts by juries has
been relaxed somewhat in modern practice, but still
there must be a substantial compliance with such form-
alities as have been long in use, as form in such cases
becomes substance. Anon., 63 Maine, 590; State vs.
Fenlason, 78 Maine, 495 ; State vs. McCormick, 84
Maine, 566; Commonwealth vs. Roby, 12 Pick., 496;
Givens vs. State, *supra;* Commonwealth vs. Tobin,
*supra.* By the common law procedure then the ver-
dict of the jury was orally pronounced in open court,
then recorded by the clerk, and affirmed by the jury,
which was done by that officer saying to them to
hearken to their verdict as recorded by the court, and
repeating to them what had been taken down for record.
At any time before the verdict was recorded, the pris-
oner had the right to have the jury polled in order to
ascertain whether or not the verdict as given was
unanimous, and in the absence of a polling, any
member of the jury had the right, *sua sponte*, to re-
cede from the verdict as agreed on at any time before
it was recorded. As the jury had the right to depart
from any finding before it was recorded and affirmed
by them, the only complete verdict in a case was that
recorded by the court. 10 Bacon's Abr., *Title* Verdict,
(G) p. 315; Coffee vs. Groover, 20 Fla., 64; Jones vs.
State, (Ala.), 12 South. Rep., 274; Wright vs. Phil-
lips, 2 G. Greene (Iowa), 191; Bishop vs. Mugler, 33
Kansas, 145; Burk vs. Commonwealth, 5 J. J. Mar-
shall, 675; State vs. Walters, 15 La. Ann., 648; Edelen,
vs. Thompson, 2 Harris & Gill, 31; Ford vs. State, 12
Md., 514; Lawrence vs. Stearns, 11 Pick., 501; Com-
monwealth vs. Dowling, 114 Mass., 259; Commonwealth
vs. Carrington, 116 Mass., 37; Lord vs. State, 16 N. H.,
325; People vs. Bush, 3 Parker's Crim. Rep., 552;

Dornick vs. Reichenback, 10 Serg. & Rawle, 84. It may be well for us to say here, in order to guard against a misapprehension, that we do not determine what is a sufficient recording of the verdict returned by a jury. The practice prevalent in this State is for the jury in all cases to write out their finding, and after announcing in open court that they have agreed upon their verdict, to hand the paper to the clerk, and after it is read aloud by that officer, the jury affirm it, and from this paper the permanent record is made. The point for decision in the present case does not make it necessary for us to pass upon the propriety of the practice referred to, as it is clear from the record that the first finding of the jury was not accepted by the court for record. The judge refused to receive the verdict when given by the jury, and they were instructed to retire and present a verdict in proper form. Thereupon they retired and brought in another and different verdict. The first verdict was never recorded, nor does it appear from the record before us that it had ever been affirmed as the unanimous finding of the jury. The jury having retired and brought in a different verdict which was recorded, it can not be held that the first is the verdict of the jury, or that it has any validity whatever. The case was still in the hands of the jury upon their second retirement, and, not being bound by their former action, they were at liberty to review the case and bring in an entirely new verdict. Whether the action of the court in refusing to have the first verdict recorded in the proper way, was an unauthorized interference with the province of the jury, is another question which will presently be considered, but confining ourselves to the effect of the first finding as given by the jury, it can not be affirmed on this record that it is of

any validity whatever. This being the case, we must turn our attention to the objections urged against the verdict that was accepted and recorded by the court.

The refusal of the court to receive the first verdict, and the acceptance and record of the second one are alleged as errors in the motion for a new trial. It is stated in Wharton's Criminal Pl. & Pr., sec. 751, that "if there is any informality, uncertainty or impropriety about a verdict, the court may require the jury to amend it before they separate." And it may be stated generally that when a jury returns an informal, insensible or a repugnant verdict, or one that is not responsive to the issues submitted, they may be directed by the court to reconsider it and bring in a proper verdict. Thus, when the verdict is guilty as charged, where the indictment is for murder, and the statute requires the degree of the offense to be ascertained in the finding of the jury, the court may tell the jury that their verdict is not in proper form, and that they must retire and designate in which degree they find the prisoner guilty. People vs. Bonney, 19 Cal., 426. And so the court may intercede and have the jury correct any informal or insensible verdict. State vs. Waterman, 1 Nev., 543; Cook vs. State, 26 Ga., 593; Gipson vs. State, 38 Miss., 295; Nemo vs. Commonwealth, 2 Grat., 558; Levells vs. State, 32 Ark., 585; Regina vs. Vodden, 6 Cox C. C., 226; Regina vs. Meany, 9 Cox C. C., 231. While it is entirely clear that the trial judge may send a jury back to the consultation room for the purpose of correcting their finding as to matters of informality, uncertainty, and where the issue has not been passed upon by them, yet the judge must not even suggest the alteration of a verdict in substance. The action of the judge in the correction of ver-

dicts should be exercised with great caution. The old practice allowed a greater exercise of authority by him over verdicts than is now permissible. 1 Chitty's Cr. Law, 648; McConnell vs. Linton, 4 Watts, 357. The judge must not throw the weight of his influence into the deliberations of the jury as to matters exclusively within their province. Garner vs. State, 28 Fla., 113, 9 South. Rep., 835; Pinson vs. State, 28 Fla., 735, 9 South. Rep., 706. Can it be said that the action of the judge in the case before us improperly influenced the jury in returning the verdict upon which judgment was entered? The first finding brought into court was for manslaughter in the first degree, and the judge refused to receive it, and told the jury in effect that it was not in such form as that the court could receive it, there being no degrees in manslaughter, and that they must retire and present a verdict in proper form. We can not say that the judge, in what he said to the jury, suggested to them the substance of what should be their verdict, as he expressly stated that the verdict was defective in form. The defect as to form is pointed out, it being a finding for manslaughter in the first degree when there were no degrees in manslaughter. The direction was to retire and present a verdict in proper form. There is nothing here to indicate the character of verdict to be returned, except that one for manslaughter in the first degree was not in proper form. If there was any error on the part of the judge, it was in refusing to receive the first verdict as presented and in not proceeding to affirm it in the proper way. It is of course true that when a complete formal verdict is returned by the jury the court has no jurisdiction in the matter and must proceed to affirm it. In the case before us the finding of manslaughter in the first degree was

technically informal, as there are no degrees of manslaughter, although we are of the opinion that such a verdict was in legal effect one of manslaughter, and the court might have regarded the words, "in the first degree" surplusage and proceeded to affirm the verdict. We can not say, however, that the court erred in referring the matter to the jury for correction in the particular mentioned, and when this was done they had the right to reconsider the case and bring in a new verdict. What is said disposes of all objections to the verdict.

The remaining point presented by counsel for plaintiff in error relates to the sufficiency of the evidence to sustain the verdict. There is no question about the fact that the accused shot and killed the deceased, but it is insisted that the testimony does not justify the inference that the killing was done with a premeditated design to effect the death of the deceased.

A majority of the court are impressed with the view that the testimony in the record before us is not sufficient to sustain the verdict of murder in the first degree. As the case has to be tried again, it is deemed best to omit any discussion of the testimony in this opinion.

The judgment is reversed, and a new trial awarded; and it will be ordered accordingly.